storm door for the Asselin vacation home at 56 Stage Island Road, Chatham, MA.

75. On or about October 15, 1995, defendant ASSELIN, SR. caused SHA to pay $2,350.00 to a local appliance store to pay for, among other things, two electric stoves, a gas stove, a new 42" television, and a new air conditioner for rental property owned by an Assistant Executive Director of SHA.

76. On or about May 7, 1996, defendant ASSELIN, SR. caused SHA to pay $300.00 to a local appliance store for the purchase and delivery of gas appliances to rental property located behind the West End Dairy owned by defendant ASSELIN, SR.

77. On or about September 12, 1996, defendant ASSELIN, SR. caused SHA to pay $350.00 to a local appliance store for a new gas stove at 62 Algonquin Place, Springfield, MA, rental property owned by William Pappas

78. On or about March 14, 1997, defendants ASSELIN, SR. and JANET ASSELIN caused SHA to pay Serv-U Decorating Center approximately $313.57 for wallpaper for a member of the Asselin family.

79. On or about June 2, 1999, defendants ASSELIN, SR. and JANET ASSELIN caused SHA to pay $189.99 for a Rubbermaid vertical storage shed and $99.99 for a Premier cedar glider for the personal use of the Asselin family.

80. On or about June 22, 1999, defendant ASSELIN, SR.

caused SHA to pay for $148.72 worth of lumber and other materials from a local lumber company for the personal use of a member of the Asselin family.

81. Beginning in late 1999 or early 2000, defendants ASSELIN, SR. and SOTIRION began skimming approximately $2,000.00 per month in quarters from the laundry facilities located within nine different housing complexes at SHA.

82. Sometime prior to April 18, 2001, defendant ASSELIN, SR. gave a copier and facsimile system, which had been purchased by SHA for $7,122.00, to the campaign office of defendant CHRISTOPHER ASSELIN.

83. On or about September 4, 2001, defendant ASSELIN, SR. caused a SHA employee to write off two snowblowers, which had been purchased for and supplied to defendant ASSELIN, SR., from SHA's property inventory list.

84. On or about October 19, 2001, defendants ASSELIN, SR. and JANET ASSELIN caused SHA to pay $219.00 to a local appliance store for materials and service at the residence of defendants RAYMOND and JANET ASSELIN, SR.

85. In or about late 2001 or early 2002, defendants ASSELIN, SR. and CHRISTOPHER ASSELIN caused SHA to pay a retailer at least $312.16 for a water cooler for the campaign office of defendant CHRISTOPHER ASSELIN.

86. On or about January 11, 2002, SHA paid approximately

$1,400.00 for the installation of a central vacuum system at a personal residence located in Chicopee, MA.

   87.   In or about August, 2002, defendants ASSELIN, SR. and SOTIRION terminated the arrangement by which they had been skimming approximately $2,000.00 in quarters per month from the laundry facilities at SHA.

   All in violation of Title 18, United States Code, Sections 371 and 641.

**COUNT 86:** **Title 18, United States Code, Sections 371, 1341, 1343 and 1346 - Conspiracy to Commit Mail and Wire Fraud**

88. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

89. From in or about April, 1998, the exact beginning date being unknown to the Grand Jury, and continuing thereafter through at least April, 2003, in the District of Massachusetts,

        **RAYMOND ASSELIN, SR.,**
        **ARTHUR SOTIRION,**
        **JANET ASSELIN,**
        **JAMES ASSELIN,**
        **RAYMOND ASSELIN, JR.,**
        **JOSEPH ASSELIN,**
        **CHRISTOPHER ASSELIN,**
        **and,**
        **MERYLINA ASSELIN,**

defendants herein, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other and other persons both known and unknown to the Grand Jury to commit an offense against the United States, that is, having devised a scheme and artifice to defraud and deprive the voters of the 12th Hampden District and the general public of the Commonwealth of Massachusetts the honest services of State Representative Christopher Asselin by means of false pretenses, representations, and promises, did cause false campaign finance reports to be sent, delivered and moved by the United States Postal Service, and to be sent in interstate commerce by wire, to the Office of Campaign and Political Finance for the purpose of executing, and

104

attempting to execute, the said scheme and artifice to defraud.

### The Objects of the Conspiracy

The objects of the conspiracy were:

90. It was the objective of the conspiracy to assist defendant CHRISTOPHER ASSELIN in his electoral campaigns for the 12th Hampden District by concealing campaign expenses paid by SHA and SHA contractors, illegal cash contributions made by various individuals, and labor performed by SHA employees on SHA time from defendant CHRISTOPHER ASSELIN's political opponents, the voters of the 12th Hampden District and the general public.

### Overt Acts in Furtherance of the Conspiracy

As a part of and in furtherance of the above-described conspiracy and to accomplish the objects and purposes thereof, defendants herein and their co-conspirators did commit and cause to be committed the following overt acts:

91. On or about June 12, 2000, defendants ASSELIN, SR., SOTIRION, and CHRISTOPHER ASSELIN caused SHA to pay for twenty-five copies of registered voter lists for defendant CHRISTOPHER ASSELIN.

92. On or about June 24, 2000, defendants ASSELIN, SR. and SOTIRION caused G & R Associates, Inc. to pay a local restaurant $630.00 to cater a campaign function for defendant CHRISTOPHER ASSELIN.

93. In or about the fall, defendant JOSEPH ASSELIN

105

permitted the metered postage machines at his employer's business to be used free of cost to mail thousands of campaign literature for the "Committee to Elect Christopher Asselin."

94. In or about the fall, 2000, defendants ASSELIN, SR. and SOTIRION caused SHA employees to manufacture campaigns signs for defendant CHRISTOPHER ASSELIN while on SHA time.

95. In or about the fall, 2000, defendants ASSELIN, SR. and SOTIRION caused SHA employees to produce labels and label campaign literature for defendant CHRISTOPHER ASSELIN while on SHA time.

96. In or about the fall, 2000, defendants ASSELIN, JR. and JANET ASSELIN collected cash contributions from various individuals and failed to deposit all of the cash contributions into the "Committee to Elect Christopher Asselin" bank account.

97. On or about September 11, 2000, defendants ASSELIN, SR., SOTIRION, and CHRISTOPHER ASSELIN caused SHA to pay a local copy store for fifteen copies of the Hill-Donnelly mail and phone lists for defendant CHRISTOPHER ASSELIN.

98. On or about November 13, 2000, defendants ASSELIN, SR., SOTIRION and CHRISTOPHER ASSELIN caused SHA to pay $1,338.30 to a local lumber company in part to pay for $128.70 for furring strips to make campaign signs for defendant CHRISTOPHER ASSELIN.

99. On or about November 16, 2000, defendants ASSELIN, SR. and SOTIRION caused Manny's Plumbing & Heating, Inc./G & R

Associates, a Joint Venture to pay a local sign store $450.00 for twenty "Chris Asselin State Representative" signs measuring four feet by five feet for defendant CHRISTOPHER ASSELIN.

100. On or about December 27, 2000, defendants ASSELIN, SR. and SOTIRION caused Manny's Plumbing & Heating, Inc./G & R Associates, a Joint Venture to pay a local printing company $8,700.00 for approximately 60,000 to 80,000 campaign letters and 40,000 to 50,000 campaign envelopes for defendant CHRISTOPHER ASSELIN.

101. On or about January 18, 2001, defendants ASSELIN, SR., JANET ASSELIN, JAMES ASSELIN, JOSEPH ASSELIN, ASSELIN, JR. and CHRISTOPHER ASSELIN caused the mailing of a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance in that said report failed to report campaign expenses paid by SHA vendors and SHA, labor provided by SHA employees on SHA time, and all cash contributions made to the Committee to Elect Christopher Asselin.

102. Sometime prior to April 18th, 2001, defendant ASSELIN, SR. gave a copier and facsimile system, which had been purchased by SHA for $7,122.00, to the campaign office of defendant CHRISTOPHER ASSELIN.

103. On or about October 15, 2001, defendants ASSELIN, SR. and SOTIRION caused G & R Associates, Inc. to pay a local printing company $2,480.00 for approximately 20,000 to 30,000

107

campaign letters and 10,000 to 15,000 campaign envelopes for defendant CHRISTOPHER ASSELIN.

104. On or about September 21, 2001, defendants ASSELIN, SR. and CHRISTOPHER ASSELIN caused SHA to pay an office supply company for eight boxes of Avery labels for defendant CHRISTOPHER ASSELIN.

105. In or about the fall, 2001, defendants ASSELIN, JR. and JANET ASSELIN collected cash contributions from various individuals and failed to deposit all of the cash contributions into the "Committee to Elect Christopher Asselin" bank account.

106. On or about January 22, 2002, defendants ASSELIN, SR., JANET ASSELIN, JAMES ASSELIN, ASSELIN, JR. and CHRISTOPHER ASSELIN caused the mailing of a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance in that said report failed to report campaign expenses paid by SHA vendors and SHA, labor provided by SHA employees, and all cash contributions made to the Committee to Elect Christopher Asselin.

107. On or about March 29, 2002, defendants ASSELIN, SR. and CHRISTOPHER ASSELIN caused SHA to pay for two hundred fifty copies of ward street listings for defendant CHRISTOPHER ASSELIN.

108. On or about April 17, 2002, defendants ASSELIN, SR., SOTIRION and CHRISTOPHER ASSELIN caused G & R Associates, Inc. to pay a local restaurant $1,570.00 for catering services for a political event for defendant CHRISTOPHER ASSELIN.

109. On or about May 24, 2002, defendants ASSELIN, SR. and CHRISTOPHER ASSELIN caused SHA to pay an office supply store for twenty boxes of Avery labels for defendant CHRISTOPHER ASSELIN.

110. On or about July 9, 2003, defendants ASSELIN, SR., JANET ASSELIN, ASSELIN, JR. and CHRISTOPHER ASSELIN caused the wiring of a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance in that said report failed to report campaign expenses paid by SHA vendors and SHA, labor provided by SHA employees on SHA time, and all cash contributions made to the "Committee to Elect Christopher Asselin."

All in violation of Title 18, United States Code, Sections 371, 1341, 1343 and 1346.

**COUNTS 87 - 88**: Title 18, United States Code, Sections 1341 and 1346 - Mail Fraud

111. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 and 88 through 90.

112. On or about the following dates, in the District of Massachusetts,

> RAYMOND ASSELIN, SR.,
> ARTHUR SOTIRION,
> JANET ASSELIN,
> JAMES ASSELIN,
> RAYMOND ASSELIN, JR.,
> JOSEPH ASSELIN,
> CHRISTOPHER ASSELIN,
> and,
> MERYLINA ASSELIN,

defendants herein, having devised a scheme and artifice to defraud and deprive the voters of the 12th Hampden District and the general public of the Commonwealth of Massachusetts the honest services of State Representative Christopher Asselin by means of false pretenses, representations, and promises, did cause to be sent, delivered and moved by the United States Postal Service the following false campaign finance reports, in that said reports failed to report campaign expenses paid by SHA vendors and SHA, labor provided by SHA employees on SHA time, and all cash contributions made to the Committee to Elect Christopher Asselin, all for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud as follows:

| Count | Date | Use of Mail in furtherance of Scheme |
|-------|------|--------------------------------------|
| 87 | 01/18/01 | Committee to Elect Christopher Asselin mailed a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance |
| 88 | 01/22/02 | Committee to Elect Christopher Asselin mailed a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance |

All in violation of Title 18, United States Code, Sections 1341 and 1346.

**COUNT 89:** **Title 18, United States Code, Sections 1343 and 1346 - Wire Fraud**

113. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 and 88 through 90.

114. On or about the following dates, in the District of Massachusetts,

**RAYMOND ASSELIN, SR.,
ARTHUR SOTIRION,
JANET ASSELIN,
JAMES ASSELIN,
RAYMOND ASSELIN, JR.,
JOSEPH ASSELIN,
CHRISTOPHER ASSELIN,
and,
MERYLINA ASSELIN,**

defendants herein, having devised a scheme and artifice to defraud and deprive the voters of the 12th Hampden District and the general public of the Commonwealth of Massachusetts the honest services of State Representative Christopher Asselin by means of false pretenses, representations, and promises, did cause to be sent in interstate commerce by wire a false Form CPF 102ND: Campaign Finance Report to the Office of Campaign and Political Finance, in that said report failed to report campaign expenses paid by SHA vendors and SHA, and all cash contributions made to the Committee to Elect Christopher Asselin, all for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud.

All in violation of Title 18, United States Code, Sections 1343 and 1346.

113

**COUNT 90:** Title 18, United States Code, Sections 371 and 1341 - Conspiracy to Commit Mail Fraud

115. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

116. From in or about April, 1998, the exact beginning date being unknown to the Grand Jury, and continuing thereafter through at least April, 2002, in the District of Massachusetts,

**ARTHUR SOTIRION
and
JOSEPH ASSELIN,**

defendants herein, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury to commit an offense against the United States, that is, having devised a scheme and artifice to defraud and deprive a local insurance agency of money and property by means of false pretenses, representations, and promises, did cause mail to be sent, delivered and moved by the United States Postal Service for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud.

### The Objects of the Conspiracy

The objects of the conspiracy were:

117. It was an objective of the conspiracy to cause the local insurance agency, defendant JOSEPH ASSELIN's employer, to pay for personal expenses related to defendant JOSEPH ASSELIN by causing local businesses to submit to his employer business invoices that falsely included said personal expenses.

114

## Overt Acts in Furtherance of the Conspiracy

As a part of and in furtherance of the above-described conspiracy and to accomplish the objects and purposes thereof, defendant herein and their co-conspirators did commit and cause to be committed the following overt acts:

118. On or about April 14, 1998, defendant JOSEPH ASSELIN caused a local electronics store to mail an invoice to his employer that included $5,424.00 for the installation of an alarm system and central vacuum system at the residence of defendants JOSEPH and MELINDA ASSELIN.

119. In or about April, 1999, defendant SOTIRION intimated to the owner of a local printing company that defendant JOSEPH ASSELIN's employer would take its printing business elsewhere unless the printing company paid defendant JOSEPH ASSELIN approximately five percent of his employer's annual sales to the printing company.

120. On or about April 28, 1999, defendants SOTIRION and JOSEPH ASSELIN caused the printing company to mail Check No. 4318 for $1,600.00 to defendant JOSEPH ASSELIN as a payment to maintain its printing business with defendant JOSEPH ASSELIN's employer.

121. On or about November 3, 1999, defendants SOTIRION and JOSEPH ASSELIN caused the printing company to mail Check No. 4609 for $290.00 to defendant JOSEPH ASSELIN as a payment to maintain

its printing business with defendant JOSEPH ASSELIN's employer.

122. On or about April 28, 2000, defendants SOTIRION and JOSEPH ASSELIN caused the printing company to mail Check No. 4945 for $2,100.00 to defendant JOSEPH ASSELIN as a payment to maintain its printing business with defendant JOSEPH ASSELIN's employer.

123. On or about April 30, 2001, defendants SOTIRION and JOSEPH ASSELIN caused the printing company to mail Check No. 5470 for $2,025.00 to defendant JOSEPH ASSELIN as a payment to maintain its printing business with defendant JOSEPH ASSELIN's employer.

124. On or about April 30, 2002, defendants SOTIRION and JOSEPH ASSELIN caused the printing company to mail Check No. 6011 for $1,785.00 to defendant JOSEPH ASSELIN as a payment to maintain its printing business with defendant JOSEPH ASSELIN's employer.

All in violation of Title 18, United States Code, Sections 371 and 1341.

**COUNTS 91 - 94:** **Title 18, United States Code, Section 1341 - Mail Fraud**

125. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25, 116 and 117.

126. On or about the following dates, in the District of Massachusetts,

**JOSEPH ASSELIN,**

defendant herein, having devised a scheme and artifice to defraud and deprive a local insurance agency, defendant JOSEPH ASSELIN's employer, of money and property by means of false pretenses, representations, and promises, did cause the following mail to be sent, delivered and moved by the United States Postal Service for the purpose of executing, and attempting to execute, the said scheme and artifice to defraud:

| Count | Date | Use of Mail in furtherance of Scheme |
|---|---|---|
| 91 | 11/03/99 | Check No. 4609 for $290.00 to defendant JOSEPH ASSELIN as a payment to maintain his employer's business with a local printing company. |
| 92 | 04/28/00 | Check No. 4945 for $2,100.00 to defendant JOSEPH ASSELIN as a payment to maintain his employer's business with a local printing company. |
| 93 | 04/30/01 | mailed Check No. 5470 for $2,025.00 to defendant JOSEPH ASSELIN as a payment to maintain his employer's business with a local printing company. |

117

| 94 | 04/30/02 | Pynchon Press mailed Check No. 6011 for $1,785.00 to defendant JOSEPH ASSELIN as a payment to maintain his employer's business with a local printing company. |

All in violation of Title 18, United States Code, Section 1341.

**COUNTS 95 - 96:** **Title 18, United States Code, Section 1951 - Extortion**

127. The United States re-alleges and incorporates by reference paragraphs 1 through 27 and Racketeering Acts 154 through 157.

128. On or about the following dates, in the District of Massachusetts, the following defendants listed below, acting in concert with others did knowingly, willfully, and unlawfully affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, in that the defendants listed below unlawfully obtained the following property from a local electrical contractor, which property was not due them and the local electrical contractor's consent having been induced by wrongful use and threat of use of economic harm and under color of official right as follows:

| Count | Defendants | Property and Date |
|---|---|---|
| 95 | **ARTHUR SOTIRION** | $660.17 worth of free electrical materials and service at the residence of defendant SOTIRION on or about 06/20/01 |
| 96 | **RAYMOND ASSELIN, SR. ARTHUR SOTIRION CHRISTOPHER ASSELIN** | $500.00 worth of free electrical materials and service to wire the in-ground pool heater at the residence of defendants CHRISTOPHER and MERYLINA ASSELIN on or about 06/20/02 |

All in violation of Title 18, United States Code, Section 1951 and Title 18, United States Code, Section 2.

119

**COUNT 97:** **Title 18, United States Code, Section 1957 - Money Laundering**

129. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

130. On or about November 2, 2001, in the District of Massachusetts and elsewhere,

**RAYMOND ASSELIN, SR.,**
and
**JOSEPH ASSELIN,**

defendants herein, knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, that is the exchange of cash in the amount of $20,000.00, such property having been derived from a specified unlawful activity, which was bribery, a violation of Title 18, United States Code, Section 201, into a check drawn on the SchwabOne bank account of defendant JOSEPH ASSELIN in order to purchase a 2002 BMW 325CiC, VIN WBABS3344JY59363 for defendant JANET ASSELIN.

All in violation of Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 2.