*Richard M. Egbert*
*Attorney at Law*

Patricia A. DeJuneas
Admitted to practice in
Connecticut & Massachusetts

99 Summer Street
Suite 1800
Boston, Massachusetts 02110
Telephone (617) 737-8222

Telecopier (617) 737-8223

January 31, 2007

Richard Rinaldi
U.S. Probation Officer
1550 Main Street, Room 212
Springfield, MA 01103-1422

RE:   United States v. Janet Asselin
      04-CR-30033-MAP-06
      Objections to Presentence Report

Dear Mr. Rinaldi:

Enclosed please find our objections to your Presentence Report ("PSR") dated November 3, 2006.

**Paragraph 8**

Mrs. Asselin did not take over the bookkeeping duties at the Committee to Elect Christopher Asselin. Rather, she was answered telephones, acted a "gopher," and helped the campaign reach out to senior citizens.

**Paragraph 95**

Mrs. Asselin had no knowledge that John Spano did not charge the Asselins for the carpet he installed.

*Law Offices of Richard M. Egbert, P.C.*

**Paragraph 201**

Mrs. Asselin had no knowledge that SHA had paid for the paper goods described in Paragraph 201.

**Paragraph 208**

Mrs. Asselin objects to the suggestion that there was a nefarious purpose for her accompanying Asselin family members to choose paint, wallpaper or tile. She accompanied her family members because she had been invited for her input on decorating style.

**Paragraph 210**

Mrs. Asselin denies that she was aware of the full extent of the theft or bribery schemes.

**Paragraph 218**

Mrs. Asselin clarifies that Mr. Higginbotham finished his work on the Asselin kitchen in 1998, not 1999. Also, he was assisted by a friend who was not an SHA employee.

**Paragraph 228**

Lisa Asselin did not make bank deposits for the Committee to Elect Christopher Asseling – Mrs. Asselin did. Moreover, an aide for Christopher Asselin completed the financial disclosure forms, not Lisa Asselin

**Paragraph 236**

Mrs. Asselin denies that she went to Palmer Goodell to run mailings through its postage meter.

**Paragraph 238**

Mrs. Asselin denies that she had any knowledge of how payment for the BMW was made.

**"Obstruction of Justice Scheme"**

Paragraph 254

Mrs. Asselin denies that she knew SHA had paid for the paint; as such, the cited conversation does not show that Mrs. Asselin was part of any scheme to obstruct justice.

Paragraph 261

Mrs. Asselin denies that she counseled Lisa Asselin to lie. Rather, she was merely repeating what Lisa Asselin had said, *i.e.*, that she did not make payments for improvements that had been made to her home. As such, the cited conversation does not show that Mrs. Asselin was part of any scheme to obstruct justice.

Paragraph 265

Mrs. Asselin denies that her statements regarding the destruction of campaign records showed that she was part of any scheme to obstruct justice within the meaning of U.S.S.G. Sec. 3C1.1. In the cited conversation, she said it was a "mistake" not to record cash contributions to the Christopher Asselin campaign and that, at one time, she had a list of such contributors "but after we had our visitors in the fall [the FBI], I got rid of the list because I was afraid of [unintelligible] the list." For the reasons described below, this conduct does not fall within the Guidelines' definition of obstruction of justice.

U.S.S.G. Sec. 3C1.1 provides for a two-level upward adjustment if a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of <u>the instant offense of conviction</u>…." (Emphasis added). "The plain language of the relevant portion of the provision requires that the obstructing conduct occur `during the investigation … of the instant offense' – that is, the offense of conviction." *United States v. Bagwell*, 30 F.3d 1454, 1458 (11th Cir. 1994). "The language of Sec. 3C1.1…does not encompass any and all obstructive conduct that a defendant may have attempted or committed; instead, it applies only to willful attempts to obstruct or impede the administration of justice [in relation to] the instant offense." *Id.* (brackets in original; citation and internal quotation marks omitted). "[T]he term `instant offense' refers <u>solely to the offense of conviction</u>…." *Id.* (emphasis added); *accord, United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir. 1991); *United States v. Dortch*, 923 F.2d 629, 632 (8th Cir. 1991); *United States v. Roberson*, 872 F.2d 597, 609 (5th Cir.), *cert. denied*, 493 U.S. 81 (1989). In keeping with these principles, the First Circuit has held that it was error for the sentencing court to apply this adjustment where a defendant provided a false name to arresting officers who had been investigating his use of a false social security number because, the First Circuit reasoned, that charge was dropped before the defendant

was sentenced. *United States v. Yates*, 973 F.2d 1, 4-5 (1st Cir. 1992). Officers did not begin their investigation into Yates' "instant offense" – the offense of conviction, which was not use of a false social security number, but the unauthorized use of credit cards -- until a later time. As such, the First Circuit reasoned, "the false name did not actually hinder the investigation of the `instant' credit card offense." *Id.* (emphasis deleted).

Application of this rule to the instant case leads to the conclusion that the obstruction of justice adjustment cannot be properly applied here. To be sure, the "instant offense[s]" have nothing whatsoever to do with any violations of state campaign laws – Mrs. Asselin has pled guilty to conspiracy to commit theft (by "stealing" items paid for by SHA and using the labor of SHA employees while they were "on SHA time") and filing a false income tax return.

Moreover, Application Note 4 states that "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is <u>material to an official investigation</u>" is an example of obstructive conduct. (emphasis added). Here, however, the alleged obstructive conduct – disposing of the list of cash contributors – was not material to an official investigation. When FBI agents searched her home just months before, they left a copy of the search warrant with the Asselins. That warrant describes documents and evidence which were clearly material to the official investigation. But documents or evidence related to Massachusetts state campaign finance laws were not listed anywhere on the warrant's description of items to be seized. In any event, even if the list of cash contributors was material to the FBI investigation, Mrs. Asselin had no reason to believe that the FBI was investigating what ordinarily amounts to a civil infraction, *i.e.*, a violation of a state campaign finance provision.

<u>Paragraph 267</u>

Mrs. Asselin denies that she had any ill intent when she said, "We need to get together on this." She merely meant that, in light of the situation (the issuance of the grand jury subpoenas to the Asselin family women), the Asselin family women should get together and talk about what was going on. Accordingly, this conversation is not illustrative of Mrs. Asselin's participation in any scheme to obstruct justice.

**Offense Level Computation, Paragraph 282**

In Paragraph 282, the PSR recommends that the Court apply a two-level downward adjustment for Mrs. Asselin's minor role in the theft scheme. In fact, Mrs. Asselin submits, she was a minimal participant and thus, should receive a four-level adjustment.

Application Note 4 states that U.S.S.G. Sec. 3B1.3(a) "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."

Here, the PSR's description of the offense conduct makes it clear that Mrs. Asselin was a minimal participant in the theft scheme. Indeed, she was plainly among the least culpable – unlike Mr. Asselin or Mr. Sotirion, she was not a leader or organizer of the scheme. And, as stated above, she was not aware of the full extent of the theft scheme. Moreover, she did not direct anyone at SHA to purchase any items, nor is there evidence that she asked Mr. Asselin to do so. Indeed, in many instances, as stated above, she did not even know that SHA paid for items purchased for the Asselins, *e.g.*, paper products and paint. She did not direct Mr. Maroney to falsify purchase orders. Further, Mrs. Asselin did not direct any SHA employee to do any work on her behalf, nor is there evidence that she asked Mr. Asselin to do so. Finally, there is no indication that she knew of Mr. Sotirion's involvement and role in the scheme.

**Offense Level Computation, Paragraph 284**

In Paragraph 284, the PSR recommends that the Court apply a two-level upward adjustment for obstruction of justice. As stated above, however, Mrs. Asselin did not obstruct justice within the meaning of the Guidelines. As such, application of this adjustment is improper.

**Paragraph 286**

Mrs. Asselin denies that the unreported income from rental of the Chatham property amounted to $20,000.

**Offense Level Computation, Paragraph 288**

Paragraph 288 indicates no adjustment for Mrs. Asselin's role in the tax offense. Please note that, in the plea agreement, the prosecution agreed that Mrs. Asselin should receive a two-level downward adjustment for her minor role in the offense. Mrs. Asselin requests that the PSR be amended to reflect a four-level downward adjustment because she actually played a minimal role in the offense.

U.S.S.G. Sec. 3B1.2(b) provides that a four-level downward adjustment is appropriate where a defendant is a minimal participant in criminal activity. Here, Mrs. Asselin played a minimal role in the tax offense: In essence, she did no more than sign the return. She did not prepare the return, the Asselins' accountant did. She did not provide the accountant with information concerning their income; in fact, she did not even know what income was listed on the return. She did not review the return once it was drawn up. Further, she did not get involved with the details of renting out the Chatham property, rental of which was one of the items not reported on the return, nor was she aware of the full extent of the theft or bribery schemes, the other sources of unreported income.

**Assets**

The $100,000 in contributions that Mrs. Asselin's husband made towards his pension plan should be removed from the list of assets because he has been told that, due to his conviction in this case, he is no longer entitled to his pension, including his own contributions.

**Cash Flow Analysis**

Please amend the PSR to indicate that Mr. Asselin no longer receives $3282 monthly from his pension for the above stated reason.

If you have any questions, please feel free to contact me.

Sincerely,

*Patricia A. DeJuneas*
Patricia A. DeJuneas